IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARRELL LEE HICKS, #405-906,

      Plaintiff

      v.

WARDEN KATHLEEN GREEN
LIEUTENANT GENESIS COPELAND[1]
PROPERTY OFFICER KENNETH STADE
LIEUTENANT SHYTINA DRUMMOND
ARC SHANIKA. GUSTUS
MED. DEPT. SUP. TRACEY GIBB[2]

      Defendants

CIVIL ACTION NO.  ELH-14-3283

\*
\*
\*
\*
\*
\*
\*
\*

**MEMORANDUM**

Plaintiff Darrell Lee Hicks, presently incarcerated at Eastern Correctional Institution in Westover, Maryland ("ECI"), claims a violation of civil rights based on deprivation of prescribed medication for his eyes during a fifteen-day period while he was held on administrative segregation.  ECF No. 1.  Hicks has attached several exhibits to his suit.  *See* ECF No. 1-1.  He seeks injunctive relief as well as compensatory and punitive damages.

The correctional defendants, Warden Kathleen Green; Lt. Genesis Copeland; Property Officer Kenneth Stade; Lt. Shytina Drummond; and Administrative Remedy Coordinator Shanika Gustus have filed a motion to dismiss or, in the alternative, motion for summary

---

[1] The Clerk shall amend the docket to reflect the full and complete spelling of defendants' names.

[2] Defendant Tracey Gibb has not been served with summons and complaint.  *See* ECF No. 5.  Plaintiff alleges that Gibb failed to respond to a July 5, 2014, request that Gibb explain why certain medications were not returned to him following their confiscation on July 2, 2014.  ECF No. 1-1 at 4.  For reasons apparent herein, had Gibb been served with the complaint, plaintiff's claim against her would fail.  Accordingly, Gibb will be dismissed from the suit.

judgment ("Motion").  ECF No. 13.  The Motion is supported by several exhibits.  Plaintiff

opposes the Motion, ECF Nos. 16 and 17, and has submitted an exhibit.[3]

A hearing in this matter is unnecessary. *See* Local Rule 105.6 (D. Md. 2014).   For the

reasons that follow, defendants' Motion, construed as one for summary judgment, shall be

granted.

## Factual Background[4]

Hicks alleges that his chronic care medication for severely dry eyes,[5] "lacri-lube," was

wrongfully and forcibly confiscated from him on July 2, 2014, by Officers Copeland and Stade,

ECF 1 at 6, and that it took fifteen days before he received replacement eye drops.  *Id.* at 9.  He

indicates that on July 3, 2014, he complained to Stade that he needed his medication but received

no response.  ECF No. 1-1 at 3.[6]  Between July 5 and July 13, 2014, additional inquiries and

complaints were repeatedly directed to Stade, Copeland, and others.  ECF No. 1 at 6-9; ECF No.

1-1 at 6-17.  Hicks indicates that he eventually received the eye medication from "Nurse Cathy"

on July 15, 2014.  ECF No. 1-1 at 18.

---

[3] Pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Hicks was notified of his right to respond and to file exhibits.

[4] Citations to the record refer to the electronic pagination, which does not always correspond to the page numbers on the documents.

[5] Hicks was diagnosed with dry eye problems in 2012.  ECF No. 16-1 at 4.  Chronic dry eye occurs when the body is unable to provide adequate moisture for the eyes.  The condition causes discomfort.  *See*  http://www.mayoclinic.org/diseases-conditions/dry-eyes/basics/ definition/con-20024129.

[6] The request, dated July 3, 2014, is drawn on a "form" that appears to have been created by Hicks, does not identify Stade by name, and states:  "Please consider yourself amenable to suit under 42 U.S.C. § 1983.  Why have you not given me back my physician prescribed medications, and are you a physician?  Thank you."  A similar "form" was directed to ECI Medical Department Supervisor Tracey Gibb on July 5, 2014.  ECF No. 1-1 at 4.  Gibb, who does not appear to be a correctional officer, would not have been responsible for the confiscation of the medication, which occurred pursuant to institutional rules.

Hicks asks the court to "imagine the unnecessary pain he suffered" during the roughly two weeks spent without the prescribed eye drops.  ECF No. 16 at 2.  He argues that if the correctional defendants cannot be held liable for deliberate indifference to his "serious medical need," medical staff should be held liable for the delay in providing the medication.[7]  *Id.*  He provides no evidence suggesting that the brief delay in obtaining the medication contributed to any serious or lasting injury to his eyes.

Defendants present a somewhat different version of events.  Officer Copeland issued Hicks an institutional infraction on July 2, 2014, for using intimidating, coercive or threatening language and demonstrating disrespect or using vulgar language. ECF No. 13-2, Records Declaration of Sgt. Michelle Switalski; ECF No. 13-3, Notice of Inmate Rule Violation. On that same date, Hicks was moved to another cell pending disposition of his infraction.  For security reasons, prisoners awaiting disposition of institutional infractions have medication returned to the Medical Department, to be dispensed by medical staff.  ECF No. 13-4, Declaration of

---

[7]  To the extent Hicks is suggesting he be provided an opportunity to amend his complaint, his request is denied.  Federal Rules of Civil Procedure 15(a)(1) and (2) provides that a party may amend his pleading once as a matter of course within 21 days after service of the complaint, or if a pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12 (b), (e), or (f), whichever is earlier. Thereafter, a party may amend his pleading "only with the opposing party's written consent or the court's leave."  Hicks does not have defendants' consent to amend his complaint, nor did he obtain the permission of the court.

At best, plaintiff's request amounts to a suggestion that he be given additional time to "go fishing" to determine whether to bring suit against medical personnel for the several days during which his medication was not provided.  Fed. R. Civ. P. 15(d) provides that the court may "on motion and reasonable notice, on just terms, permit a party to serve a supplemental pleading setting out any transactions, occurrence, or event that happened after the date of the pleading to be supplemented."  The supplement provided by Hicks involves matters unrelated to his allegations against the correctional defendants, which took place prior to his contact with Medical Department staff.  Amendment at this juncture would be unjust.

Captain Walter Holmes, at ¶1.  It appears that Hicks's medications were taken from him on that date, consistent with institutional practice.

On July 11, 2014, during a routine cell search, Hicks was found in unauthorized possession of thirty-nine pills, which were confiscated and taken to the Medical Department. ECF No. 13-5, Notice of Inmate Rule Violation.[8]  Officer C. Westbrook recommended charging Hicks with violating an institutional rule against possession, use, hoarding or accumulating medication without authorization, and that he be held on administrative segregation pending disposition of the charge.  ECF No. 13-5, Notice of Inmate Rule Violation.

On July 14, 2014, Hicks filed Administrative Remedy Procedure ("ARP") ECI 1212-14, asserting that upon receiving the infraction of July 2, 2014, he was moved to another cell, and his medications were confiscated. ECF No. 13-6, ARP ECI 1212-14.  However, Hicks withdrew that ARP on August 14, 2014.  ECF No. 13-6 at 5; ECF No. 13-7, Declaration of Sgt. Greg Ward, ¶ 5.  The Withdrawal Form contained a statement that his complaint cannot be further addressed through the ARP process, and that the failure to exhaust using the ARP process, by withdrawing the ARP, may result in dismissal of the complaint at a higher level.  ECF No. 1-1 at 1, ARP Withdrawal Form. A similar ARP filed by Hicks in August of 2014 was procedurally dismissed as repetitive to ECI 1212-14.  ECF No. 13-8,  ARP ECI 13-80-14; ECF No. 13-6, ¶ 7. Neither ARP was filed as a grievance with the Inmate Grievance Office ("IGO").  ECF No. 13-9, ¶3, Declaration of Scott S. Oakley, IGO Executive Director (stating that no grievances were filed by Hicks since February 4, 2014).

---

[8] The pills were Depakole, Neurontin, Excedrin, and Clonidine.

Hicks was seen by medical personnel on July 8, 2014, for complaints of chest pains. ECF No. 13-10 (selected medical records) at 1-2.  On July 11, 2014, he attended a Chronic Care Visit. *Id.* at 4.  During these visits, he did not voice concern about the lack of eye drops.

On July 12, 2014, Hicks complained that his dry eye condition was painful and required medication.  *Id.* at 7.  The eye medication was provided two days later at a medical visit on July 14, 2014.  *Id.*

## I.   Standard of Review

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  As noted, the Motion is supported by many exhibits.

A motion styled in this manner (*i.e.*, in the alternative) implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court"s consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."

*Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[9]  In any event, in accordance with *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), plaintiff was informed of his right to file a response to the Motion, and the opportunity to submit affidavits, declarations, and other documentary evidence. *See* ECF 14.  As noted, he filed two opposition responses.  *See* ECF No. 16, 17.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment . . . cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans*

---

[9] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

*v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted).  On the other hand, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Plaintiff has not filed an affidavit under Rule 56(d). Moreover, he has filed responses in opposition to the Motion.  I am satisfied that it is appropriate to address defendants' Motion as one for summary judgment, because it will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a).  It provides, in part:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

The Fourth Circuit has explained "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  However, the court

must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility. *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002); *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, as indicated, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, __ F.3d ___, No. 13-2212, slip op. at 12 (4th Cir. March 12, 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Indeed, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See*, *e.g.*, *Boone v. Stallings*, 583 Fed. App'x. 174 (4th Cir. 2014) (per curiam).

If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Anderson*, 477 U.S. at 248. *See Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court must, however, also abide by the

affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial. *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp.,* 477 U.S. at 323-24).

### Discussion

Defendants argue that (1) Hicks has failed to state a cognizable civil rights claim based on the taking of personal property; (2) the brief period Hicks was without the eye drops did not amount to an Eighth Amendment deprivation of medical care; and (3) Hicks's eye condition did not constitute a "serious medical need." Defendants further assert that Hicks failed to properly exhaust administrative remedies regarding the claim that his medications were wrongfully confiscated and not returned to him in a prompt manner. ECF No. 13-1 at 9-10. In addition, Defendant Green, ECI's Warden, moves to dismiss the complaint because the doctrine of respondeat superior does not impose liability under the civil rights statute. ECF No. 13-1 at 8-9. Defendants also assert qualified immunity from damages. *Id.* at 10-11.

Defendants are entitled to dismissal of the complaint based on Hicks's failure to exhaust administrative remedies. Therefore, I need not address all of the defendants' arguments, which appear to have merit.

The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an administrative remedy procedure available to Maryland state prisoners, within the meaning of 42 U.S.C. § 1997e(a), for the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction ["DOC"]." Md. Code (2008 Repl. Vol., 2011 Supp.), § 10-206(a) of the Correctional Services Article ("C.S."); *see generally* C.S. §§ 10-201 *et seq*. Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." Code of Maryland Regulations ("COMAR") 12.07.01.01B(8).[10]

---

[10] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only

In the Maryland correctional system, if the particular institution in which an inmate is incarcerated provides an administrative remedy procedure, the inmate must complete the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; Division of Correction Directive 185-002 (effective August 27, 2008).

Filing a request for administrative remedy with the Warden of the Maryland prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure process provided by the Division of Correction to its prisoners. The prisoner must file an ARP with the warden within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first knew of the incident or injury giving rise to the complaint, whichever date is later. COMAR 12.07.01.05A. If this request is denied, the prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR 12.07.01.05C. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Inmate Grievance Office. *See* COMAR 12.07.01.03; 12.07.01.05B; *see also* C.S. § 10-206; § 10-210. Complaints are reviewed preliminarily by the IGO. *See* C.S. § 10-207; COMAR 12.07.01.06. If the complaint

---

to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id.* at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B(4).  The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.J. § 10-208(c); COMAR 12.07.01.07-.08.  The conduct of such hearings is governed by statute.  C.S. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.  However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  *See* C.S. § 10-209(b)-(c).

In either event, the final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted his/her remedies.  *See* C.S. § 10-210.  But, an inmate need not seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement.  *See*, *e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."), *cert. denied*, 537 U.S. 949 (2002).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003), *aff'd,* 98 Fed. App'x. 253 (4th Cir. 2004); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also*

*Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

As a prisoner, Hicks is subject to the strict requirements of the exhaustion provisions. Administrative remedies must, however, be available to the prisoner, and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Fourth Circuit addressed the meaning of "available" remedies in *Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008):

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Here, as indicated, administrative remedies were available to plaintiff. Therefore, as a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, *supra,* 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). If defendants show that a claim is subject to the ARP process but has not been exhausted, the

court may not consider the merits of the claim.  *See Jones v. Bock*, 549 U.S. at 220; *see also Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  Rather, Hicks's claims must be dismissed if he cannot show that he has satisfied the administrative exhaustion requirement under the PLRA, or that defendants have forfeited their right to raise non-exhaustion as a defense.  *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

As noted, Hicks withdrew his ARP complaint, and acknowledged that doing so might have a negative impact on any future attempt to pursue his claim.  There is no showing that defendants improperly influenced Hicks's decision to withdraw his ARP complaint, or that he did so involuntarily, under duress, or through coercion.  The second ARP complaint was dismissed as repetitive.  In any event, it would not have been considered on the merits given the withdrawal of the first ARP.  Hicks did not pursue his grievance further by appealing the summary dismissal of the second ARP, nor did he pursue at the administrative level any argument that the withdrawal of the first ARP was improperly obtained.

Accordingly, defendants' Motion shall be granted.  A separate Order follows.


April 2, 2015                                                    /s/_____
(Date)                                                          Ellen L. Hollander
                                                                United States District Judge